**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **In re FLORIDA BALLOT  ORDER STATUTE LITIGATION** | CASE NO. <u>8:19-cv-91</u> |
| | **(Underlying Case No. 4:18-cv-262-MW-CAS Pending in the United States District Court for the Northern District of Florida – Tallahassee Division)** |

)
)
)
)
)
)
)
)
)
)
)
)
)
)

**THIRD PARTY ELECTION SYSTEMS & SOFTWARE, LLC'S BRIEF IN SUPPORT OF**
<u>**MOTION TO QUASH SUBPOENA**</u>

Third Party Election Systems & Software, LLC ("ES&S") submits this Brief in Support of Its Motion to Quash Subpoena (the "Motion"), and shows the Court as follows.

## I.      PARTIES IN THE UNDERLYING LAWSUIT

The plaintiffs in the underlying lawsuit identified in the caption above are Nancy Carola Jacobson, Terence Fleming, Susan Bottcher, Priorities USA, DNC Services Corporation / Democratic National Committee, DSCC a/k/a Democratic Senatorial Campaign Committee, DCC a/k/a Democratic Congressional Campaign Committee, Democratic Governors Association, and Democratic Legislative Campaign Committee (collectively, "Plaintiffs").

The defendant in the underlying lawsuit identified in the caption above is Laurel M. Lee, in her official capacity as the Florida Secretary of State ("Defendant" or "Florida SOS").

The defendant intervenors in the underlying lawsuit identified in the caption above are the National Republican Senatorial Committee and the Republican Governors Association (the "Intervenors").

## II.   INTRODUCTION

The Plaintiffs are currently pursuing a lawsuit in Florida federal court contesting the constitutionality of a Florida statute (discussed further below). Plaintiffs waited until right before the close of discovery (which is on March 8, 2019) to issue an onerous subpoena to ES&S seeking the production of documents from ES&S and a Rule 30(b)(6) deposition of ES&S. (Matson Declaration, Ex. A) (the "Subpoena").   The Subpoena seeks irrelevant documents and information. (*See id.*). The Plaintiffs' Complaint (discussed further below) does not even mention ES&S (nor does it discuss in any meaningful way the services and products ES&S provides).  This is also true for the Answers filed in the Lawsuit. (discussed further below) (the "Answers").

Notwithstanding their express obligation to do so, Plaintiffs did not take reasonable steps to avoid imposing undue burden or expense on ES&S. *See* Fed. R. Civ. P. 45(d)(1). For example, the Subpoena seeks the production of documents, correspondence and electronically stored information ("ESI") for the period of January 1, 1995 through the present (a period of nearly 25 years) without any explanation why such an expansive period is reasonable under the circumstances. (*See* Subpoena at p.9, ¶9).   The Subpoena also seeks the disclosure of ES&S' confidential commercial information and trade secrets, solicits unpaid-for expert opinions, fails to exclude from its purview privileged documents/matters, and is otherwise deficient under Fed. R. Civ. P. 45.  For these reasons, and those more fully

set forth below, the Subpoena should be quashed.

Strictly in the alternative (*i.e.*, if this Court decides not to quash all of the Subpoena), ES&S prays for modification of any remaining portion of the Subpoena by substantially reducing the scope and breadth of the requests, topics, and temporal period, and for a protective order in favor of ES&S.

## III.   PERTINENT FACTUAL BACKGROUND OF THE LAWSUIT

In May 2018, the Plaintiffs sued the Florida Secretary of State ("Florida SOS") in the United States District Court for the Northern District of Florida (the "Lawsuit"). (Matson Declaration, Ex. B) (Plaintiffs' Florida Complaint).  ES&S is not a party to the Lawsuit.  (*See id.*).  The Lawsuit challenges the constitutionality of Florida's "Ballot Order Statute."  (Complaint, ¶2) (citing Fla. Stat. § 101.151(3)(a) (2017)).

Florida's Ballot Order Statute states as follows:

> The names of the candidates of the party that received the highest number of votes for Governor in the last election in which a Governor was elected shall be placed first for each office on the general election ballot, together with an appropriate abbreviation of the party name; the names of the candidates of the party that received the second highest vote for Governor shall be placed second for each office, together with an appropriate abbreviation of the party name.

*Id.*  The Plaintiffs allege that as a result of the Ballot Order Statute, "candidates of the Governor's political party receive the benefits of position bias [*i.e.*, Plaintiffs allege that the candidate listed first on a ballot attracts additional votes solely due to his or her position on the ballot], creating an unfair and artificial electoral advantage."  (Complaint, ¶¶1, 2).  The Plaintiffs allege that the Ballot Order Statute violates the First Amendment, and the Equal Protection Clause of the Fourteenth Amendment, of the United States Constitution.  (Complaint, ¶51).  The Florida SOS denies that the Ballot Order Statute confers an unfair and artificial electoral advantage, and denies that the Ballot Order

Statute is unconstitutional.   (*See* Matson Declaration, Ex. C) (Florida SOS Answer). The parties' briefing in the Lawsuit argues extensively primarily regarding only the foregoing subject matter.   (*See, e.g.*, Matson Declaration, Ex. E (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction—Florida Case ECF No. 30); Ex. F (Secretary's Response in Opposition to Request for Preliminary Injunction—Florida Case ECF No. 44)).   The parties' pleadings and briefing, however, do not appear to mention ES&S or discuss the products and services ES&S provides. (*See, e.g.*, *id.*).

## IV.   PROCEDURAL HISTORY

ES&S was served with the Subpoena on February 14, 2019.   (*See* Subpoena).[1] The Subpoena was issued out of the United States District Court for the Northern District of Florida, Gainesville Division.   *See Nancy Carola Jacobson et al. v. Michael Ertel et al.*, Case No. 4:18-cv-262 (2018).   It is being challenged here in the United States District Court for the District of Nebraska because the Federal Rules indicate that a motion to quash or modify a subpoena is filed in the court "for the district where compliance is required."   Fed. R. Civ. P. 45(d)(3).   ES&S has its principal office in Omaha, Nebraska. (*See* Matson Declaration, Ex. G) (Nebraska Secretary of State report).   The records requested in the document subpoena are primarily located in Nebraska.   (*See* Declaration of Ben Taylor (the "Taylor Declaration"), ¶20).   Further, the Plaintiffs indicated in the Subpoena that the deposition of ES&S was to occur at the Marriott Hotel, 101 South 10th Street, Omaha, Nebraska 68102.   (*See* Matson Declaration, Ex. A (Subpoena), at p.1).   Thus, this Court is the "district where

---

[1] Discovery closes in the Lawsuit on March 8, 2019. (Matson Declaration, Ex. H -- Florida Case ECF No. 88) (Florida Case Scheduling Order).

compliance is required," and accordingly the Motion has been properly filed here.

## V.    LEGAL STANDARD

With respect to subpoenas issued to third parties, the Eighth Circuit has indicated that, "concern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs." *Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (internal citations omitted).

"Pursuant to Fed. R. Civ. P. 45(d)(3)(A), the court must quash or modify a subpoena that 'subjects a person to undue burden.'" *ACI Worldwide Corp. v. MasterCard Techs., LLC*, Case No. 8:14CV31, 2016 WL 3647850, at *2 (D. Neb. July 1, 2016) (quoting Fed. R. Civ. P. 45(d)(3)(A)(iv)).  The Court also must quash or modify a subpoena that "requires disclosure of privileged or other protected matter…"  Fed. R. Civ. P. 45(d)(3)(A)(iii).  The Court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information[.]"  Fed. R. Civ. P. 45(d)(3)(B)(i).  The Court also may quash or modify a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B)(ii).

"The court must also limit discovery otherwise allowed if 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]'" *ACI Worldwide*, 2016 WL 3647850, at *2 (quoting Fed. R. Civ. P. 26(b)(2)).

"Additionally, the court may issue a protective order to prevent or limit discovery

to 'protect a party or person from annoyance, embarrassment, oppression or undue burden or expense,' including 'forbidding the disclosure of discovery,' 'forbidding inquiry into certain matters,' or 'requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.'"  *Id.* (quoting Fed. R. Civ. P. 26(c)(1)). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

## VI.   ARGUMENT

### A.   The Court Must Quash or Modify the Subpoena Because It Subjects ES&S to Undue Burden.

"In evaluating whether a subpoena presents an undue burden, courts consider the following factors: (1) the relevance of the information requested; (2) the need of the party for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested information; and (6) the burden imposed." *ACI Worldwide*, 2016 WL 3647850, at *2 (citation omitted).

### 1.   The Documents and Information Sought by the Subpoena Are Not Relevant to the Lawsuit.

Plaintiffs describe the subject matter of the Subpoena as follows: "[w]hat voting systems [ES&S] currently uses and their ability to rotate candidates[.]" (*See* Matson Declaration, Ex. A (Subpoena), p.1) (relevant portion highlighted).  But the Complaint does not allege that ES&S' voting systems are somehow causing or contributing to the

allegedly unconstitutional nature of the Ballot Order Statute, or otherwise indicate why ES&S' confidential and proprietary voting systems should be the subject of discovery in the Lawsuit.    (Matson Declaration, Ex. B) (Plaintiffs' Florida Complaint).   Nor do the Answers filed in the Lawsuit directly implicate ES&S. (Matson Declaration, Exhibits C & D) (Answers).   Further, ES&S stipulates that its voting systems allow for and have the ability to "rotate candidates" (*see* Taylor Declaration, ¶21), and thus there is no reason to seek discovery from ES&S in the Lawsuit.   In fact, in the concurrently submitted Taylor Declaration, it is shown that ES&S' voting systems "rotate candidates" on the ballots of a number of states other than Florida (and thus, if requested and contractually agreed to by ES&S, ES&S could do the same thing in Florida).   (*See* Taylor Declaration, ¶22).

Similarly, Plaintiffs' Document Request No. 1 mimics the subject matter identified on the first page of the Subpoena by requesting, among other things, ES&S to search for, and attempt to collect and produce, 25 years' worth of its software manuals, guides, *etc.*  Such request subjects ES&S to undue burden because ES&S simply admits that its voting systems allow for the rotation of candidates on voting ballots.  There is no relevant purpose to require ES&S to engage in such an exercise.  Neither can Plaintiffs show why ES&S' older voting systems (many of which are no longer in use) are relevant to the question of whether ES&S could implement ballot rotation of candidates in a *prospective* election. (Taylor Declaration, ¶23).

The other subjects of inquiry identified in the Subpoena also seek irrelevant information. For example, Plaintiffs' Document Request No. 2 seeks documents related to discussions or meetings in which ES&S has participated regarding Ballot Order in the

State of Florida.  (Matson Declaration, Ex. A (Subpoena), p.11).  But again, the Complaint contains no allegation that ES&S engaged in any discussions or meetings regarding Ballot Order in the State of Florida or that ES&S had anything to do with the passage of the statute at issue or its enforcement.  (Matson Declaration, Ex. B) (Plaintiffs' Florida Complaint). Nor do the Answers make such an allegation. (Matson Declaration, Exhibits C & D) (Answers). Thus, on its face, this request is irrelevant to the Lawsuit.

As another example, Deposition Topic Nos. 1-4 appear to relate to ES&S' historical, current or future services and products provided to facilitate Florida elections. (Matson Declaration, Ex. A (Subpoena), p.11-12).  But here, too, the Complaint contains no allegations that address such issues, so there is no relevant basis to question ES&S about the same.  (Matson Declaration, Ex. B) (Plaintiffs' Florida Complaint). Nor do the Answers make such allegations. (Matson Declaration, Exhibits C & D) (Answers). Moreover, these topics would likely cause ES&S to speculate as to any new voting systems a county may purchase.

Finally, Deposition Topic No. 5 states as follows: "[t]he role you play in ballot design, ballot printing, ballot counting, and recount procedures in the State of Florida." (Matson Declaration, Ex. A (Subpoena), p.12).  Again, the Complaint contains no allegations that address such issue, so there is no relevant basis to question ES&S about the same.  (Matson Declaration, Ex. B) (Plaintiffs' Florida Complaint). Nor do the Answers make such allegations. (Matson Declaration, Ex. C & D) (Answers). Because the discovery sought from ES&S is irrelevant, the Subpoena should be quashed.

2.     **Plaintiffs Have Not Identified Any Need For the Requested Information.**

As demonstrated immediately above, Plaintiffs' Complaint is silent with respect to ES&S.  So are the Answers.  Plaintiffs' briefing in the Lawsuit also does not focus on (or even discuss) ES&S.  (*See, e.g.*, Matson Declaration, Ex. E (Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Preliminary Injunction—Florida Case ECF No. 30)).  ES&S has submitted herewith the Taylor Declaration that confirms what appears to be Plaintiffs main question (whether ES&S could implement ballot rotation in Florida elections).  (Taylor Declaration, ¶¶21-22).  Accordingly, Plaintiffs have shown no need for the information requested in the Subpoena.  Thus, the Subpoena subjects ES&S to undue burden and should be quashed.

3.     **The Breadth of the Subpoena Is Expansive.**

*The Subpoena's "Definitions" Section*. The "definitions" section of the Subpoena is expansive and, if ES&S were required to apply such "definitions" in responding to the Subpoena, ES&S would be subjected to unnecessary burden and expense.  As just one example, the Subpoena defines "[c]ommunication" as "any transfer of information of any type, whether written, oral, electronic, or otherwise and includes transfers of information via email, report, letter, text message, voicemail message, written memorandum, note, summary, and other means."  (Matson Declaration, Ex. A (Subpoena), p.4).  Thus, for requests that use the term "communication" (there are several), ES&S would be required to search for, collect, review for privilege, otherwise analyze, and produce, scores of emails.  It would also need to interview numerous employees (and potentially others) to determine whether there were any oral conversations they participated in

regarding the subject matter of the given request, and whether there exists any report, letter, text message, voicemail message, written memorandum, note, or summary responsive to the Plaintiffs' requests. Given the complete lack of relevance of the subject matter of Subpoena, forcing ES&S to incur the expense and burden of conducting the foregoing investigations, collections and analysis is not proportional to the needs of the Lawsuit. *See* Fed. R. Civ. P. 26(b)(1).

_The Subpoena's "Instructions" Section_. The "instructions" section of the Subpoena is expansive and, if ES&S were required to apply such "instructions" in responding to the Subpoena, ES&S would be subjected to unnecessary burden and expense.  As just one example, the Subpoena states that, "If any otherwise responsive document was, but is no longer, in existence or in your possession, custody, or control, identify the type of information contained in the document, its current or last known custodian, the location/address of such document, and the identity of all persons having knowledge or who had knowledge of the document, and also describe in full the circumstances surrounding its disposition from your possession or control." (Matson Declaration, Ex. A (Subpoena), p.9). Similar to the definition for "communications" above, this "instruction" would require extensive interviewing of ES&S employees and others (and other unnecessary work).   As an illustration of the absurdity of this "instruction," take as a hypothetical a written note jotted down by a software engineer from 20 years ago regarding some small task he or she was "working on" for an iteration of ES&S' previous voting systems.  If that engineer threw that note in the trash after it was no longer needed by him or her, ES&S would be required to search for such "document," identify its contents, identify the name and address of the software

engineer involved, identify where it is now located, and explain why the document is no longer in existence. Surely such an exercise is not required under the Federal Rules, and in any event, would not be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

The "Instructions" further contain extensive commands and protocols for the production of ESI.  (Matson Declaration, Ex. A (Subpoena), p.7-9). ES&S anticipates that complying with such instructions, commands and protocols will add expense and burden to ES&S in an effort to comply with such requirements. To the extent ES&S is required to produce any documents, correspondence, or ESI to Plaintiffs, ES&S reserves the right to further object to Plaintiffs' proposed ESI production protocols to the extent it cannot reasonably comply with the same.

*The Subpoena's Document Requests*. The document requests in the Subpoena are impermissibly broad and lack relevancy. Plaintiffs' first document request states the following:

- **REQUEST NO. 1.** All manuals, guides, and/or other documents and communications regarding the capabilities of your voting technology previously or currently used in the State of Florida or that you anticipate will be used in the 2020 general election in the State of Florida, including, but not limited to, all documents and communications regarding Ballot Order and/or Ballot Order Rotation.

(Matson Declaration, Ex. A (Subpoena), p.10). As described in the Taylor Declaration, there are likely hundreds or thousands of manuals, guides, and/or other documents and communications regarding the capabilities of ES&S' voting technology previously or currently used in the State of Florida (or that will be used in upcoming elections). (Taylor Declaration, ¶24). This would include thousands of emails.  (Taylor Declaration, ¶24). Compounding this problem is Plaintiffs' request that ES&S collect such documents for a

period of 25 years.  (Matson Declaration, Ex. A (Subpoena), p.9).  The administrative burden and expense associated with searching for, analyzing, determining relevancy or privilege, and producing these documents would be enormous (including an ultimate expense (including attorneys' fees) to ES&S likely in the tens of thousands of dollars range).  (Taylor Declaration, ¶24).  This effort, expense, and burden is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs' second document request states the following:

- **REQUEST NO. 2.** All documents and communications related to any discussion or meeting (formal or informal) in which you have participated regarding Ballot Order in the State of Florida, including, but not limited to, all documents and communications between or among you and/or the Florida Secretary of State and Florida counties.

(Matson Declaration, Ex. A (Subpoena), p.11). This request would require ES&S to conduct an investigation to determine who at ES&S would potentially have engaged in such communications – which would require significant time and expense to ES&S in the form of analysis, internal interviewing, and related activities. (Taylor Declaration, ¶25).  Once identified, ES&S would be required to search for documents and communications relating to such persons (including their emails), collect the same, conduct a review for relevancy and privilege, and produce such communications and documents to Plaintiffs.  (*Id.*).  The time, effort and expense of such an exercise (including attorneys' fees) would be substantial.  (*Id.*). This effort, expense, and burden is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1).

*The Subpoena's Deposition Topics*. The deposition topics in the Subpoena are impermissibly broad. Plaintiffs' first deposition topic states the following:

- **DEPOSITION TOPIC NO. 1.** The capabilities of your voting technology previously and currently used in the State of Florida and of your voting

technology that you anticipate will be used in the 2020 general election in the State of Florida, including, but not limited to, whether such technology permits Ballot Order Rotation by county, precinct, ballot, or in any other way.

(Matson Declaration, Ex. A (Subpoena), p.11).   The term "capabilities of your voting technology" is vague and ambiguous and lacks relevancy.   Given this issue, ES&S would have difficulty identifying the corporate designee(s) to put up for this topic.   The use of the qualifier "previously and currently" is problematic because it contains no temporal limitation (for example, Plaintiffs may seek to apply the same temporal limitation here as identified in Plaintiffs' document requests, in which case ES&S would be required to attempt to find designee(s) who could speak to this issue for the past 25 years).   Especially in light of ES&S' willingness to provide (and concurrent submission of) a declaration with this Motion stating that it has the capability to facilitate Ballot Order Rotation by county, precinct, and ballot (*see* Taylor Declaration, ¶22), this topic (and the deposition generally) is unnecessary, duplicative, and not proportional to the needs of the case.   *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs' second deposition topic states the following:

- **DEPOSITION TOPIC NO. 2.** Any and all steps and administrative tasks, including, but not limited to, ballot design, training, testing, costs, deadlines, timing, and machine or software recalibration involved in implementing any form of Ballot Order Rotation by county, precinct, ballot, or in any other way in Florida's elections for use in the November 2020 election.

(Matson Declaration, Ex. A (Subpoena), p.11).  This topic (which contains no less than seven different subject matters) is wide-ranging, unclear, vague and ambiguous and lacks relevancy. Given such issues, ES&S would have difficulty identifying the corporate designee(s) to put up for this topic.   Further, given the absence of any mention in the

Complaint/Answers regarding ES&S and its role in Florida elections, it defies reason that ES&S would be required to prepare to give a deposition on such a wide-ranging topic.  The amount of time, preparation, attorneys' fees, internal burdens, and expense for ES&S to prepare for a deposition on this topic would be very onerous (including "hard" expenses likely in the range of tens of thousands of dollars). (Taylor Declaration, ¶26). Thus, this topic (and the deposition generally) is unnecessary and not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs' third deposition topic states the following:

- **DEPOSITION TOPIC NO. 3.** Any and all steps and processes, including, but not limited to, ballot design, training, testing, costs, deadlines, timing, and machine and software calibration, and all other administrative tasks, involved in the current ballot generation process in the State of Florida and the ballot generation process in the State of Florida in regard to the 2020 election.

(Matson Declaration, Ex. A (Subpoena), p.11-12).  This topic (which contains no less than eight different subject matters) is wide-ranging, unclear, vague and ambiguous and lacks relevancy. The term "all other administrative tasks" is especially vague and ambiguous.  Given such issues, ES&S would have difficulty identifying the corporate designee(s) to put up for this topic.  Further, given the absence of any mention in the Complaint/Answers regarding ES&S and its role in Florida elections, it defies reason that ES&S would be required to prepare to give a deposition on such a wide-ranging topic.  The amount of time, preparation, attorneys' fees, internal burdens, and expense for ES&S to prepare for a deposition on this topic would be very onerous (including "hard" expenses likely in the range of tens of thousands of dollars). (Taylor Declaration, ¶26).  Thus, this topic (and the deposition generally) is unnecessary and not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs' fourth deposition topic states the following:

- **DEPOSITION TOPIC NO. 4.** Whether and how your voting technology in the State of Florida currently address the counting of votes of voters who utilize the same polling location but are provided different ballot styles to vote based on their residential address.

(Matson Declaration, Ex. A (Subpoena), p.12).  This topic is vague and ambiguous and lacks relevancy. Given this issue, ES&S would have difficulty identifying the corporate designee(s) to put up for this topic.  Even if Plaintiffs provided additional clarity on what this topic means, ES&S would still be required to conduct an internal investigation to determine who at ES&S would have the subject matter expertise to address it. The topic is also objectionable because it lacks a temporal limitation. The amount of time, preparation, attorneys' fees, internal burdens, and expense for ES&S to prepare for a deposition on this topic would be very onerous (including "hard" expenses likely in the range of tens of thousands of dollars). (Taylor Declaration, ¶26).  Given ES&S' proffered declaration, this topic (and the deposition generally) is unnecessary and not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

Plaintiffs' fifth deposition topic states the following:

- **DEPOSITION TOPIC NO. 5.** The role you play in ballot design, ballot printing, ballot counting, and recount procedures in the State of Florida.

(Matson Declaration, Ex. A (Subpoena), p.12).   In light of the allegations of the Complaint and Answers, and the irrelevance of the subject matter of this topic as it relates to ES&S, this topic is not proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). Further, the issue addressed in the Complaint/Answers is almost exclusively ballot rotation, not "recount procedures." This aspect of the topic is accordingly even more irrelevant than the other items referenced in the topic.  The topic

is also objectionable because it lacks a temporal limitation. The amount of time, preparation, attorneys' fees, internal burdens, and expense for ES&S to prepare for a deposition on this topic would be very onerous (including "hard" expenses likely in the range of tens of thousands of dollars). (Taylor Declaration, ¶26).  For all of the foregoing reasons, the Subpoena subjects ES&S to undue burden and should be quashed.

      **4.**      **The Time Period Covered by the Subpoena Is Not Reasonable.**

The Instructions state as follows: "[t]he document production topics apply to the period from January 1, 1995 through the present…."  This period, which includes a 25-year temporal limitation, is egregiously over-broad and unduly burdensome, and it would cause ES&S to speculate as to any future voting systems a county might purchase.  From ES&S' review of the docket and pleadings, it appears that the only question that might be germane to the lawsuit that directly implicates ES&S is whether ES&S' voting systems could handle ballot rotation if the Ballot Order Statute was ruled unconstitutional.  Given ES&S' proffered declaration, this question has been answered in the affirmative.  (Taylor Declaration, ¶¶21-22).  Requiring ES&S to search for, locate, review, categorize, process, and produce documents over a 25 year span in light of the limited relevant subject matter that may implicate ES&S is patently unreasonable and unduly burdensome.  The deposition topics in large part have no stated temporal limitation (*see* Matson Declaration, Ex. A (Subpoena), p.11-12), so ES&S is left to guess at what period applies to these topics.  This shortcoming alone demonstrates that the temporal limitation for such topics is improper.  Thus, the Subpoena subjects ES&S to undue burden and should be quashed.

5.      **Plaintiffs Have Failed to Describe with Particularity the Requested Information.**

As demonstrated above, Plaintiffs fail to describe with particularity the information and documents they seek in their Subpoena. Thus, the Subpoena subjects ES&S to undue burden and should be quashed.

6.      **The Burden Compliance with the Subpoena on ES&S Would Be Extreme and Is Not Proportional to the Case.**

As demonstrated above, and in the Taylor Declaration, compliance with the subpoena would be a major expense and burden on ES&S that is not justified by any legitimate need for the requested information and documents. Thus, the Subpoena subjects ES&S to undue burden and should be quashed.

B.      **The Plaintiffs Failed to Exclude Privileged and Otherwise Protected Materials from Their Document Requests and Deposition Topics.**

The Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter…"   Fed. R. Civ. P. 45(d)(3)(A)(iii).   Plaintiffs' document requests do not seek to exclude from the subpoenaed document production privileged or otherwise protected information or documents.  (Matson Declaration, Ex. A (Subpoena), p.10-11). Nor do Plaintiffs' deposition topics seek to exclude privileged or otherwise protected subjects and matters. (*Id.* at pp.11-12). To the extent ES&S is required to produce any documents to Plaintiffs, and/or provide testimony pursuant to the Subpoena, ES&S reserves the right to assert privilege and/or any other protections at the time any such documents or matters are identified by ES&S, consistent with Fed. R. Civ. P. 26(b)(5).

C.      **The Subpoena Impermissibly Requires Disclosure of ES&S' Trade Secrets and Other Confidential Research, Development, and Commercial Information.**

The Court may quash or modify a subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information[.]"  Fed. R. Civ. P. 45(d)(3)(B)(i).

"Additionally, the court may issue a protective order to prevent or limit discovery to 'protect a party or person from annoyance, embarrassment, oppression or undue burden or expense,' including 'forbidding the disclosure of discovery,' 'forbidding inquiry into certain matters,' or 'requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way.'"  *ACI Worldwide*, 2016 WL 3647850, at *2 (quoting Fed. R. Civ. P. 26(c)(1)). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Id.* (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

"When proprietary or trade secret information is sought, 'the party opposing discovery must show that the information is a trade secret or other confidential research, development, or commercial information ... and that its disclosure would be harmful to the party's interest in the property.'" *ACI Worldwide Corp. v. MasterCard Techs., LLC*, No. 8:14CV31, 2016 WL 3647850, at *4 (D. Neb. July 1, 2016) (quoting *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991)). "The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* "If the party

seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information." *Id.*

"A 'trade secret' is defined under the Nebraska Trade Secrets Act as 'information, including, but not limited to, a drawing, formula, pattern, compilation, program, device, method, technique, code, or process that: (a) derives independent economic value, actual or potential, from not being known to, and not being ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.' Neb.Rev.Stat. §§ 87–502(4)." *Softchoice Corp. v. MacKenzie*, 636 F. Supp. 2d 927, 936 (D. Neb. 2009).   As demonstrated in the concurrently submitted Taylor Declaration, the documentation and information implicated by the Subpoena easily meets Nebraska's (and any other state's) definition of trade secret documentation and information.   (*See generally,* Taylor Declaration) (explaining the nature of ES&S' confidential, proprietary and trade secret information, software and related matters; identifying the reasonable efforts taken by ES&S to keep such information confidential; identifying the value derived by ES&S from such materials; and identifying the risks and harm that ES&S would face if such materials were made public).   *See also Picker Int'l Corp. v. Imaging Equip. Servs., Inc.*, 931 F. Supp. 18, 35–36 (D. Mass. 1995), *aff'd sub nom. Picker Int'l Inc. v. Leavitt*, 94 F.3d 640 (1st Cir. 1996).

*Plaintiffs' Document Requests*. Document Request No. 1 seeks: "All manuals, guides, and/or other documents and communications regarding the capabilities of your voting technology…."   (Matson Declaration, Ex. A (Subpoena), p.10).   Such

documentation is confidential, proprietary, and trade secret. (*See generally*, Taylor Declaration). Document Request No. 2 seeks, among other things: "documents and communications [exchanged] between or among you and/or the Florida Secretary of State and Florida counties." (Matson Declaration, Ex. A (Subpoena), p.11). As demonstrated by the Taylor Declaration, such documents and communications are confidential, proprietary, and trade secret. (*See generally*, Taylor Declaration; *see especially* ¶16-17).

*Plaintiffs' Proposed Deposition Topics*. Deposition Topic No. 1 states: "The capabilities of your voting technology…." (Matson Declaration, Ex. A (Subpoena), p.11). In all likelihood, this topic will involve questions regarding ES&S' trade secrets and proprietary information. (*See generally*, Taylor Declaration). Deposition Topic No. 2 and 3 identify as deposition topics those steps, processes and administrative tasks involved in implementing any form of Ballot Order Rotation by county, precinct, ballot, or in any other way, including those used in the current ballot generation process in the State of Florida and in anticipated ballot generation process in the State of Florida in the future. (Matson Declaration, Ex. A (Subpoena), p.11-12). These topics are vague and ambiguous, but in all likelihood, they will also implicate ES&S' trade secrets and proprietary information. (*See generally*, Taylor Declaration). Deposition Topic No. 4 states: "Whether and *how* your voting technology in the State of Florida currently address the counting of votes…." (Matson Declaration, Ex. A (Subpoena), p.12). (emphasis added).  Again, questioning that addresses *how* ES&S' voting systems function and operate implicate ES&S' trade secrets and proprietary information. (*See generally*, Taylor Declaration).  Deposition Topic No. 5 states: "The role you play in

ballot design, ballot printing, ballot counting, and recount procedures in the State of Florida." (*Id.*). Depending on the questions asked, this topic may also implicate ES&S' trade secrets and proprietary information. (*See generally*, Taylor Declaration).

The Taylor Declaration also demonstrates how disclosure of ES&S' confidential, proprietary and trade secret information and documents would be harmful to ES&S' interest in the property. (*See* Taylor Declaration, ¶¶10-14).

Even if Plaintiffs could somehow show that the foregoing requested documents and deposition topics are relevant to the Lawsuit (which, for the reasons set forth above they cannot), Plaintiffs still will be required to show that such documents and information are absolutely essential for the preparation of their case for trial. *See ACI Worldwide Corp. v. MasterCard Techs., LLC*, No. 8:14CV31, 2016 WL 3647850, at *5 (D. Neb. July 1, 2016) ("Although [the third party's] source code for [its software product] may be tangentially relevant to [plaintiff's] claims against [defendant] and [defendant's] defense that [the third party's software] was independently developed, the court finds [plaintiff] has not met its burden to show the source code is *necessary* to prepare the case for trial against [defendant].") (emphasis in original). This Plaintiffs cannot do.

Further, given the sensitivity of the requested documentation and information, the risks to ES&S of disclosure in the Lawsuit outweigh any tangential or hypothetical alleged need Plaintiffs have for such documentation and information. *See id.* ("Moreover, the potential injury that disclosure might cause [the third party] outweighs the need of [plaintiff] to obtain the information.").

For all of the foregoing reasons, the Subpoena should be quashed.

**D.      The Subpoena Improperly Solicits Unpaid-For Expert Opinions.**

The Court also may quash or modify a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B)(ii).

"Whether to compel a non-retained expert witness to produce documents or testify at a deposition is within the sound discretion of the District Court." *In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 304 F.R.D. 379, 382 (S.D.N.Y. 2015) citing Fed.R.Civ.P.45(d)(3)(C)). "A Court may do so upon a showing of a 'substantial need for the testimony or material that cannot be otherwise met without undue hardship' and assurance 'that the subpoenaed person will be reasonably compensated.'" *Id.*

"Courts generally consider the following five factors in determining whether to exercise such discretion: (1) The degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; (2) the difference between testifying to a previously formed or expressed opinion and forming a new one; (3) the possibility that, for other reasons, the witness is a unique expert; (4) the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and (5) the degree to which the witness is able to show that he has been oppressed by having continually to testify."  *Id.*

The Subpoena can be construed as requesting expert opinions from ES&S. Consider for example, Deposition Topic No. 2, which states: "Any and all steps and administrative tasks, including, but not limited to, ballot design, training, testing, costs, deadlines, timing, and machine or software recalibration involved in implementing any

form of Ballot Order Rotation by county, precinct, ballot, or in any other way in Florida's elections for use in the November 2020 election." (Matson Declaration, Ex. A (Subpoena), p.11). This topic calls for expert opinions. *See* Fed. R. Evid. 702. To properly prepare for this topic, ES&S will have to study, analyze and prepare an opinion or opinions with respect to the matters addressed in the topic. (*See* Taylor Declaration, ¶26). Plaintiffs cannot demonstrate ES&S is a unique expert with respect to the subject matter of this topic, nor can Plaintiff show the inability to locate a comparable expert. ES&S will be subject to significant burdens if it is forced to comply with the Subpoena, as outlined further above.

Accordingly, the Court should quash the subpoena. Alternatively, the Court should order that ES&S be compensated as an expert at the rate of $500 per hour in preparing to provide, and in actually providing, the expert opinions solicited.

**E.** **Plaintiffs Must Be Required to Demonstrate That They Exerted Reasonable Efforts to Obtain the Subpoenaed Discovery in the Lawsuit and Why They Need the Same from ES&S.**

"The court must also limit discovery otherwise allowed if 'the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]'" *ACI Worldwide*, 2016 WL 3647850, at *2 (quoting Fed. R. Civ. P. 26(b)(2)). Plaintiffs should be required to demonstrate that they engaged in good faith discovery efforts in the Lawsuit, and why they were not able to obtain the subpoenaed discovery from the parties in the Lawsuit. For example, Document Request No. 2 seeks disclosure of communications between the Florida SOS and ES&S. Presumably, Plaintiffs already obtained the same (or could

have obtained the same) from the Florida SOS in the Lawsuit during discovery.  If not,

Plaintiffs should be required to demonstrate why they did not.  If that explanation is not

reasonable, then the Subpoena should be quashed pursuant to Fed. R. Civ. P. 26(b)(2).

**VII.    CONCLUSION**

For all of the reasons above, the Subpoena should be quashed.

Dated this 28th day of February 2019.

ELECTION SYSTEMS & SOFTWARE,
LLC, Third Party,

By:  /s Michael C. Cox
    Michael C. Cox, #17588
    John V. Matson, #25278
    KOLEY JESSEN P.C., L.L.O.
    One Pacific Place, Suite 800
    1125 South 103rd Street
    Omaha, NE 68124-1079
    (402) 390-9500
    (402) 390-9005 (facsimile)
    mike.cox@koleyjessen.com
    john.matson@koleyjessen.com

Attorneys for Third Party ES&S.

## CERTIFICATE OF SERVICE

I hereby certify that on the 28th day of February, 2019, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court, and was sent via email and regular U.S. Mail, postage prepaid, to the following:

David A. Fugett
Jesse Dyer
Florida Department of State
R.A. Gray Building Suite 100
500 South Bronough St.
Tallahassee, FL 32399-0250
David.fugett@dosmyflorida.com
Jesse.dyer@dos.myflorida.com

Mohammad O. Jazil
Gary V. Perko
Malcom N. Means
Hopping Green & Sams, P.A.
119 S. Monroe St., Suite 300
Tallahassee, FL 32301
mjazil@hgslaw.com
gperko@hgslaw.com
mmeans@hgslaw.com

Frederick S. Wermuth
King Blackwell Zehnder & Wermuth, P.A.
PO Box 1631
Orlando, FL 32802-1631
fwermuth@kbzwlaw.com

Abha Khanna
Perkins Coie, LLP
1201 Third Ave., Suite 4900
Seattle, WA 9101-3099
akhanna@perkinscoie.com

Marc E. Elias
Elisabeth C. Frost
Amanda Callais
Jacki L. Anderson
John M. Geise
Alexi M. Velez
Perkins Coie LLP
700 Thirteenth St., N.W., Suite 600
Washington, D.C. 20005-3960
melias@perkinscoie.com
efrost@perkinscoie.com
acallais@perkinscoie.com
jackianderson@perkinscoie.com
jgeise@perkinscoie.com
avelez@perkinscoie.com

Jason Torchinsky
Phillip M. Gordon
Shawn T. Sheehy
Holtzman Vogel Josefiak
45 North Hill Drive, Suite 100
Warrenton, VA 20106
jtorchinsky@hvjt.law
pgordon@hvjt.law
ssheehy@hvjt.law

                    /s Michael C. Cox
                    Michael C. Cox